**FILED**

AUG 2 3 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE ANDERSEN

UNITED STATES OF AMERICA          )
                                  )       **07 CR 544**
                                  )
         v.                       )       Violations:
                                  )       Title 18, United States
                                  )       Code, Sections 2 and
                                  )       1343.
HAMDE OTHMAN and                  )
M & A FOOD MART, INC.             )
                                  )       **MAGISTRATE JUDGE DENLOW**
                                  )

## COUNT ONE

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1.    At times relevant to this indictment:

    a.    The United States Department of Agriculture ("USDA"), Food and Nutrition Service ("FNS"), was a federal agency responsible for the administration and implementation of the Food Stamp Program throughout the United States. The Food Stamp Program ("FSP") provided assistance to needy individuals in the form of food stamp coupons, and later through Electronic Benefit Transfers, which were known in Illinois as "Link card benefits", to be exchanged or redeemed for approved food products.

    b.    The Link card system was developed to enable government agencies to deliver FSP benefits to recipients through the use of electronic transfers, much like debit and credit cards, to eliminate actual, hard copy food stamp coupons. The redemption aspect of the Illinois Link card system was

operated under contract by Northrop-Gruman through an affiliate in Austin, Texas.

   c.    To become eligible to participate in the Food Stamp Program, candidate store owners in the Chicago area were required to complete, sign and submit to the Chicago Field Office of the USDA a Food Stamp Program Application for Stores, form FCS 252.   Upon completion of the application process, if the store and its owners qualified, the store was authorized to redeem food stamp benefits from the USDA to participate in the program.

   d.    Authorized store owners were required to report to the USDA changes in food sales, inventory, stock, size of the store, as well as change of location, name, and ownership.

   e.    Authorized stores could lawfully accept Link card benefits only for eligible food items and not for items such as alcoholic beverages, tobacco, hot foods, ready-to-eat foods, lunch counter items, vitamins, medicines, cosmetics, cleaning materials, or pet foods.

   f.    Authorized stores could not exchange Link card benefits for cash or accept Link card benefits from another store.

   g.    Prior to receiving authorization to participate in the Food Stamp Program, the applicant store owner or his/her representative was required to participate in an interview conducted by the USDA.   During the

2

interview, the applicant store owner was informed of prohibitions against unlawfully purchasing and redeeming food stamps or Link card benefits, and selling ineligible items for benefits.

h.    Through the Link card system, Food Stamp Program benefits were automatically credited to the Illinois recipient's Link card each month. In order for recipients to access their electronic benefits to purchase eligible food items, they were required to present their Link card to a retailer authorized by the USDA. Unauthorized retailers could not accept Link cards. The Link cards could only be processed by a specially-provided and manufactured point-of-sale terminal designed to accept Link cards (hereinafter the "Link card machine"). After "swiping" the Link card through the Link card machine, the food stamp recipient entered a personal identification number ("PIN") into the machine's keypad to complete the transaction. The Link card machine recorded the Link card account number, the date and time of the transaction, and the amount debited from the recipient's Link card.

i.    Once the necessary information was received by the Link card machine, it automatically called a 1-800 telephone number, which dialed into a computer system located in Austin, Texas. Through this contact, the Link card transaction was either approved or rejected, and the result was then communicated to the Link card machine, again via the open telephone line. If

the Link card transaction was approved, funds would be transferred or caused to be transferred into the bank account of the authorized retailer to whom the Link card machine was registered. The transfer of funds normally took place on the next business day following the approved Link card transaction.

      j.     In particular, at the end of the business day the computer system operated in Austin, Texas would total all approved transactions for each Illinois retailer during that retailer's designated business day. From that total an electronic Automated Clearing House ("ACH") file would be created containing the identification number, bank account number and routing number for the retailer's designated bank, a file header indicating that the file constituted an EBT payment, and the amount to credit. This file would then be sent electronically, by wire, from Austin, Texas to a bank located within the State of Illinois. That bank would subsequently disburse the retailer's Link reimbursements.

      k.     Defendant HAMDE OTHMAN was the on-site manager of defendant M & A FOOD MART, INC., (hereinafter "M & A"), a neighborhood grocery store located at 5034 W. North Avenue, Chicago, Illinois.

      l.     On or about March 31, 2001, Person A, the president of M & A, caused to be prepared and submitted to USDA a Food Stamp Program Application for Stores on behalf of M & A. On the application, Person A

4

represented and caused to be represented to the USDA, among other things, that (1) M & A was owned by a privately-held corporation, of which Person A was the president; (2) OTHMAN was the store's on-site manager; (3) M & A's gross annual sales were approximately $190,188, and (4) M & A's food stamp eligible sales were approximately $169,840 per year.

m.    On July 10, 2001, as part of the application process, Person A signed a Retailer Training Acknowledgment on behalf of M & A, which stated, in part, that: 1) she had attended retailer orientation held by FNS and that the Food Stamp Program rules and regulations had been thoroughly reviewed; 2) she understood that exchanging cash for food stamp benefits is illegal and could result in permanent disqualification from the Food Stamp Program as well as criminal prosecution; and 3) it was her responsibility to ensure that all full-time and part-time employees were properly instructed regarding the Food Stamp Program regulations.

n.    On July 10, 2001, Person A also signed an EBT Retailer Agreement on behalf of M & A which stated, in part, that: 1) she agreed that only eligible food items would be exchanged for food stamp benefits; 2) she accepted responsibility on behalf of the firm to prevent violations of the Food Stamp Program, including but not limited to trading cash for food stamp benefits or accepting benefits from people not authorized to use them; and 3) she

5

understood that accepting food stamp benefits in exchange for anything other than eligible food items was a violation of Federal criminal and civil law.

      o.    On or about September 17, 2001, the USDA authorized Person A and M & A to participate in the Food Stamp Program and issued to M & A the food stamp authorization number 4888618.

      p.    On or about October 27, 2000, and continuing until at least July 16, 2002, Person A maintained a bank account in the name of "M & A Foods" at First Bank of Oak Park("First Bank"), Chicago, Illinois,("the First Bank Account") which Person A designated for the purpose of receiving electronic transfers of reimbursements for Link card benefit redemptions using the authorization code assigned to M & A. HAMDE OTHMAN was added to the account as a signatory no later than March 5, 2002. Only Person A and OTHMAN were authorized signatories on this bank account.

      q.    No later than on or about July 24, 2002, and continuing until at least September 4, 2002, OTHMAN  maintained a bank account in the name of "M & A Foods" at TCF Bank, Chicago, Illinois,("the TCF Account") which he designated for the purpose of receiving electronic transfers of reimbursements for Link card benefit redemptions using the authorization code assigned to M & A. OTHMAN was the sole authorized signatory on this account.

      r.    From on or about March 1, 2002 through September 4, 2002, M &

A redeemed a total of approximately $498,055.82 in Link card benefits.

    2.      Beginning no later than on or about March 1, 2002 and continuing until on or about September 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

HAMDE OTHMAN and
M & A FOOD MART,

defendants herein, together with others known and unknown to the grand jury, knowingly devised, intended to devise and participated in a scheme to defraud, and to obtain money and property from the USDA by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

    3.      It was part of the scheme that between no later than March 1, 2002 and September 4, 2002, defendants OTHMAN and M & A, and others known and unknown to the grand jury, used and caused the use of M & A's authorized LINK card machine to process fraudulent LINK card transactions in which defendants exchanged, and caused LINK card benefits to be exchanged, for discounted amounts of cash, knowing that such exchanges were prohibited under the FSP.

    4.      It was further part of the scheme that defendants OTHMAN and M & A fraudulently redeemed and caused to be redeemed LINK card benefits, and fraudulently caused Transactive Corporation and its affiliates to wire transfer approximately five hundred thousand dollars to the bank accounts in the name

7

of "M & A Food Mart" at First Bank of Oak Park, Chicago, Illinois and TCF

Bank, Chicago, Illinois.

5.    It was further part of the scheme that beginning in or about March

1, 2002 and continuing until on or about September 4, 2002, defendant

OTHMAN withdrew and caused to be withdrawn substantial sums of money

from the accounts he controlled at from First Bank of Oak Park and TCF Bank

in the form of, among other things, cash and checks payable to cash.  Defendant

OTHMAN used and caused to be used the money withdrawn from First Bank of

Oak Park and TCF Bank to purchase LINK card benefits, and to pay others

associated with this scheme and for his own personal use, among other things.

6.    It was further part of the scheme that on multiple occasions between

in or about March 1, 2002 and September 4, 2002, defendants OTHMAN and M

& A knowingly redeemed and caused to be redeemed benefits from Link cards

in exchange for the payment of U.S. currency to the card holder, and knowingly

allowed others known and unknown to the grand jury to redeem benefits from

Link cards, using M & A's Link card machine, in exchange for the payment of

discounted amounts of currency.

7.    It was further part of the scheme that on or about July 9, 2002, a

transaction occurred at "Store A," a store not authorized to exchange benefits,

using the M & A link card machine, whereby Link card benefits in the amount

of $59.99 were exchanged for a payment of $30.00 in United States currency to the card holder.

8.    It was further part of the scheme that defendants HAMDE OTHMAN and M & A misrepresented and concealed and caused to be misrepresented and concealed the purposes of, and the acts done in furtherance of, the scheme in order to avoid detection of the scheme.

9.    On or about August 23, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

HAMDE OTHMAN and
M & A FOOD MART,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic funds transfer in the amount of $4,806.38 to TCF Bank, Burr Ridge, Illinois, for deposit into the M & A Food Mart account;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1. Paragraphs One through Eight of Count One of this indictment are realleged and incorporated herein as if fully set forth.

2. On or about August 27, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

HAMDE OTHMAN and
M & A FOOD MART,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic funds transfer in the amount of $5,031.29 to TCF Bank, Burr Ridge, Illinois, for deposit into the M & A Food Mart account;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1. Paragraphs One through Eight of Count One of this indictment are realleged and incorporated herein as if fully set forth.

2. On or about September 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

HAMDE OTHMAN and
M & A FOOD MART,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic funds transfer in the amount of $14,355.50 to TCF Bank, Burr Ridge, Illinois, for deposit into the M & A Food Mart account;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1. Paragraphs One through Eight of Count One of this indictment are realleged and incorporated herein as if fully set forth.

2. On or about September 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

HAMDE OTHMAN and
M & A FOOD MART,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic funds transfer in the amount of $7,676.15 to TCF Bank, Burr Ridge, Illinois, for deposit into the M & A Food Mart account;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1. Paragraphs One through Eight of Count One of this indictment are realleged and incorporated herein as if fully set forth.

2. On or about September 5, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

HAMDE OTHMAN and<br>M & A FOOD MART,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic funds transfer in the amount of $6,837.57 to TCF Bank, Burr Ridge, Illinois, for deposit into the M & A Food Mart account;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1. Paragraphs One through Eight of Count One of this indictment are realleged and incorporated herein as if fully set forth.

2. On or about September 6, 2002, at Chicago, in the Northern District of Illinois, Eastern Division,

HAMDE OTHMAN and<br>
M & A FOOD MART,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic funds transfer in the amount of $4,126.65 to TCF Bank, Burr Ridge, Illinois, for deposit into the M & A Food Mart account;

In violation of Title 18, United States Code, Sections 1343 and 2.

## **FORFEITURE ALLEGATION**

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1.      The allegations of Counts One through Six of the foregoing indictment are realleged and fully incorporated herein for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of the violations of Title 18, United States Code, Section 1343, of the foregoing indictment,

HAMDE OTHMAN and
M & A FOOD MART,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any and all right, title, and interest in any property, real and personal, which constitutes and is derived from the proceeds traceable to the offenses charged in Counts One through Six.

3.      The interests of the defendants, subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A), include but are not limited to approximately $398,982.51 and $10,110.90 in an account in the name of M & A Food Mart, Inc., at TCF Bank, Burr Ridge, Illinois.

4.      If any of the forfeitable property described above, as a result of any act or omission by the defendants:

a.      cannot be located upon the exercise of due diligence;

15

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28 United States Code, Section 2461(c) to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

16